UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALGOYCE SMITH,
Parent and next friend of H.S.,

    Plaintiff,

        v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 10-1628 (JEB)

## MEMORANDUM OPINION

On Sept. 24, 2010, Plaintiff Algoyce Smith, acting on behalf of her child H.S., brought this action, challenging a hearing officer's determination that H.S. was not denied a free and appropriate education (FAPE) pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Magistrate Judge Deborah A. Robinson, having been referred the case, has issued a Report and Recommendation upholding the administrative decision. Plaintiff has now submitted her Objections to the Report. Finding that the Report appropriately upholds the decision of the hearing officer, the Court will accept it and grant summary judgment to the District of Columbia.

    **I.**    **Background**

The Court will not reiterate the full factual background of the case, which is set out in detail in the 19-page Report. Suffice it to say that the hearing officer issued his determination (HOD) on June 27, 2010, finding that Plaintiff had failed to prove that Defendant had denied H.S. a FAPE. Plaintiff then filed this action on Sept. 24, and both sides thereafter filed Cross-Motions for Summary Judgment. The case was subsequently referred to Magistrate Judge

Robinson for full case management, and she issued her report on Feb. 17, 2012. Plaintiff timely filed her Objections to the Report on March 2. The Court does not require a response from Defendant.

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered her recommended disposition, a party may file specific written objections. The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see, e.g., Winston & Strawn LLP v. FDIC, 2012 WL 252418, at *3 (D.D.C. 2012) (court must conduct *de novo* review of objections to magistrate judge's report and recommendation). The district court may then "accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

**III.    Analysis**

Plaintiff nominally raises two objections to the Report. First, she claims that the Report "erred in determining that H.S.'s [individualized education program (IEP)] was reasonably calculated to confer educational benefits." Obj. at 4. Second, she maintains that the "Report erred in determining that H.S.'s progress was 'de minimis.'" Id. at 5. (The Court assumes that the latter argument is actually that the Report erred in finding that the progress was more than *de minimis*.) These two are in reality the same argument – namely, that DCPS's failure to provide H.S. a laptop and other software meant that the IEP conferred only minimal benefits. The Court will address the question after first setting forth some of IDEA's basic principles.

   A.   Statutory Framework of IDEA

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services

designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982). As a condition of receiving funding under IDEA, school districts are required to adopt procedures to ensure appropriate educational placement of disabled students. See 20 U.S.C. § 1413. A student's eligibility for a FAPE under IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" or "individualized education program team." § 1414. Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. See § 1414(d)(1)(B).

School districts must also develop a comprehensive plan, known as an individualized education program (IEP), for meeting the special educational needs of each disabled student. See § 1414(d)(2)(A). The IEP must be formulated in accordance with the terms of IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." Rowley, 458 U.S. at 204. "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and alterations omitted).

IDEA requires that children with disabilities be placed in the "least restrictive environment" so that they can be educated in an integrated setting with children who are not disabled to the maximum extent appropriate. See § 1412(a)(5)(A). IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement

process.  See §§ 1414(f), 1415(b)(1).  Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, see §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." § 1415(h).  A qualified impartial hearing officer conducts the due process hearing in accordance with the Act.  5 D.C. Mun. Regs. § 3030.1.

Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court.  § 1415(i)(2); 5 D.C. Mun. Regs. § 3031.5.  The district court has remedial authority under the Act and broad discretion to grant "such relief as the court determines is appropriate" under IDEA as guided by the goals of the Act.  § 1415(i)(2)(C)(iii).

Although styled Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision.  IDEA provides a framework for such review.  More specifically, IDEA permits "any party aggrieved by the findings and decision" rendered during administrative proceedings to "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2).  The reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  § 1415(i)(2)(C).  In a review of a Hearing Officer Decision (HOD), the burden of proof is always on the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so.'"  Reid, 401 F.3d at 521 (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989)).

The Supreme Court has held that IDEA's preponderance-of-the-evidence standard of review does not authorize unfettered *de novo* review. See Rowley, 458 U.S. at 206 ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Courts must give administrative proceedings "due weight," id., and "'[f]actual findings from the administrative proceedings are to be considered prima facie correct.'" Roark ex rel. Roark v. District of Columbia, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). The statute, however, also suggests "less deference than is conventional in administrative proceedings," Reid, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party. See § 1415(i)(2)(C)(ii). When no additional evidence is introduced in a civil suit seeking review of a HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record. District of Columbia v. Ramirez, 377 F. Supp. 2d 63, 67 (D.D.C. 2005).

    B.    <u>IEP Benefits</u>

The Supreme Court explained in Rowley that "a court's inquiry . . . is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" 458 U.S. at 206-07 (footnote and internal footnote omitted). As the Report notes, Plaintiff has not raised a procedural objection, instead focusing her inquiry on the second prong. See Report at 15.

In conducting the analysis here, it is important to bear in mind precisely what Plaintiff's challenge is. As her Due Process Complaint Notice states, the only issue raised is this: "DCPS

Denied the Student with [*sic*] a Free and Appropriate Public Education by Failing to Provide the Student with his Recommended Assistive Technology Equipment as Part of his educational program." Administrative Record (A.R.) at 101. This, too, was all that the Hearing Officer focused on: "The sole issue in the complaint is whether DCPS has denied the student FAPE by failing to provide the student with a lap top computer and educational software recommended in the assistive technology assessment." Id. at 5.

The Report first determined that "the specialized instruction and related services provided to H.S. through his IEP were reasonably calculated to enable H.S. to receive educational benefits, as he made progress under his IEP without the recommended assistive technology." Report at 14. Plaintiff in her Objections argues that H.S.'s progress was minimal and that he "demonstrated only three months growth in a years' [*sic*] time." Obj. at 5. Both the Report and the Objections thus focus on H.S.'s progress, which is consistent with a yardstick used by other courts in this District. See, e.g., Roark , 460 F. Supp. 2d at 44 ("Academic success is an important factor in 'determining whether an IEP is reasonably calculated to provide education benefits.'") (citing Berger v. Medina City School Dist., 348 F.3d 513, 522 (6th Cir. 2003); Hunter v. District of Columbia, 2008 WL 4307492, at *9 (D.D.C. 2008) (citing cases with same holding).

There is no dispute that from July 2009 to June 2010, H.S.'s reading score improved from 54-65, which is a grade-equivalent increase from 2.4 to 2.7 and an age-equivalent increase from 7 years 8 months to 8 years 2 months. See Report at 15-16. (The hearing officer, both parties and the Report agree, made a serious error when he misinterpreted the age as grade and found reading scores had reached 8th-grade level. Id. at 16.) H.S.'s math scores similarly increased from October 2009 to June 2010 from a raw score of 63 to 68, which translates to grade-

6

equivalent increases in three areas of 2.7 to 3.1, 2.6 to 4.0, and 2.4 to 2.8. Id. at 17. These are concrete advances. Of equal significance, the sole witness at the administrative hearing, H.S.'s special education teacher Erica Harris, testified without rebuttal that H.S. is making progress in his IEP goals, that he is now "comfortable with reading in small group settings," he is "show[ing] great progress" in reading initiative, "he has made progress in decoding," although his progress is "minimal" in reading comprehension, and he has "made a lot of progress and growth" in math. Hrg. Tr. at 28-33. Finally, as Harris noted, it was not realistic to expect major growth, but rather to seek growth of 1 to 1.5 grade levels. Id. at 22. The increases in the testing scores, accompanied by his other development, therefore, demonstrate that H.S.'s academic progress has not been *de minimis*. This is particularly true, when measured against H.S.'s potential for growth. See Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 185 (3d Cir. 1988) ("Obviously, the question whether benefit is *de minimis* must be gauged in relation to the child's potential."). The Report reached this same conclusion. See Report at 18.

The Court, therefore, believes the Report was correct when it determined that H.S.'s "current academic program has clearly conferred some educational benefit upon him, and the record shows that H.S. has made progress under his IEP without the recommended AT [assistive technology]." Report at 18.

Aside from H.S.'s academic progress, there is a second, independent reason to uphold the HOD. In Rowley, the Supreme Court held that the FAPE requirement is satisfied "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." 458 U.S. at 203. The Supreme Court further held that the precursor to IDEA did not require states to maximize the potential of handicapped students, and that in light of finding that the deaf child at issue was receiving significant educational benefit

7

and related services that were calculated to meet her educational needs, the [IDEA precursor] did not require the school system to provide the additional service requested by the plaintiff in that case. Id. at 198, 203, 210. The Supreme Court thus held that the earlier statute required that a school system provide only the "basic floor opportunity." Id. at 201; but see Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 862 (6th Cir. 2004) (modifying the standard to require school systems to provide a "meaningful educational benefit"); T.R. ex rel. N.R. v. Kingwood Township Bd. of Educ., 205 F.3d 572, 577 (3d. Cir. 2000) (same). This is also a point the Report discusses. See Report at 14-15.

      Here H.S. received a great deal more than a "basic floor opportunity"; indeed, he received a meaningful education benefit. H.S. is enrolled at a private school at DCPS expense and receives 28.5 hours per week of specialized instruction, including one hour per week of speech-and-language therapy, and 30 minutes per week of occupational therapy. A.R. at 6. In addition, he has daily access in the classroom to a computer, a calculator, highlighters, and sticky notes, see Hrg. Tr. at 39, all of which were recommended in the Assistive Technology Evaluation. A.R. at 53. He also could use (and take home) a Fusion Writer to assist in word processing, typing, and proofreading, see Hrg. Tr. at 40, and the school was in the process of installing Read Outloud and Draft Builder software, id. at 45, both of which were recommended by the Evaluation. A.R. at 52-54. While it is certainly understandable that H.S.'s mother wants to provide him every possible educational opportunity, DCPS is not required to fund services that go considerably beyond the "basic floor opportunity." The Court cannot conclude that, given all of this technological assistance, H.S. was denied a FAPE here because DCPS did not also provide him with a laptop or other software to take home.

8

## II. Conclusion

For the reasons stated herein, the Court will issue a contemporaneous Order accepting the Recommendation of the Magistrate Judge to deny Plaintiff's Motion and grant Defendant's.

/s/ James E. Boasberg<br>
JAMES E. BOASBERG<br>
United States District Judge

Date:  March 6, 2011